## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS L. DAVIS,** | : | **CIVIL NO. 1:CV-06-01763** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **J. MINER, WARDEN,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

### I.   Introduction

Plaintiff, Thomas L. Davis, an inmate currently incarcerated at the United States Penitentiary at Lee ("USP-Lee") in Jonesville, Virginia, filed this civil rights action under the Federal Tort Claims Act ("FTCA"), and a *Bivens*[1] styled civil rights claim pursuant to 28 U.S.C. § 1331.  He alleges that prison officials at his former place of confinement, the United States Penitentiary at Allenwood ("USP-Allenwood") in White Deer, Pennsylvania destroyed his personal property

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

and legal materials, and failed to protect him from a sexual assault committed

upon him by another prisoner.[2]

Presently before the court is Davis' motion for summary judgment (Doc. 18)

and motion for judgment as a matter of law (Doc. 35), as well as Defendants'[3]

motion to dismiss, or in the alternative, for summary judgment.  (Doc. 42.)  For the

reasons set forth below, the court will deny Davis' motions and grant Defendants'

motion for summary judgment.

## II.   **Relevant Procedural History**

Davis filed his complaint on September 11, 2006.  (Doc. 1.)  He proceeds

*pro se* and *in forma pauperis* in this matter.[4]  Prior to the court ordering service of

the complaint upon Defendants, Davis filed a request to the defendants for

settlement (Doc. 6) and a set of interrogatories directed to Defendant Miner.  (Doc.

---

[2] In his form civil complaint, Davis checked the box for a civil rights complaint pursuant to 28 U.S.C. § 1331 and the box for a civil complaint pursuant to the FTCA.  (*See* Doc. 1.) However, Davis does not specify a FTCA claim or *Bivens* claim for either of the two allegations. Therefore, the court will address both claims as brought under both the FTCA and 28 U.S.C. § 1331.

[3] Named as defendants in Davis' complaint are Jonathan C. Miner, Warden of USP-Allenwood; Richard Snyder, Correctional Counselor; and, Sharon Uzialko, Senior Officer Specialist.  (*See* Doc. 1.)

[4] Davis completed this court's form application for leave to proceed *in forma pauperis* and authorization form.  (*See* Docs. 9 & 11.)  An Administrative Order was thereafter issued on September 25, 2006, (Doc. 12), directing the warden at Davis' place of confinement to commence deducting the full filing fee from his prison trust fund account.

8.)  The court ordered service of the complaint, the settlement request, and the

interrogatories on October 2, 2006.  (*See* Doc. 13.)  Defendants' answer to Davis'

complaint was initially due on or before December 4, 2006.  (*See* Doc. 19.)

Before Defendants' answer to the complaint was due, Davis filed a motion

for summary judgment with a supporting memorandum.  (Doc. 18.)  In the motion,

Davis claimed to be seeking summary judgment against Defendants "on the

grounds that [Davis] has genuine issues of material facts and full permission from

Warden, Jonathan C. Miner, see attached tort claims."  (*Id*. at 1.)  His motion was

not, however, accompanied by a separate statement of material facts, as required

by Middle District of Pennsylvania Local Rule 56.1.  Nevertheless, in the motion

Davis offered again to settle out of court, requesting a transfer from USP-

Allenwood, $85,000 for pain and suffering, and a list of costs totaling $276,276.

(*Id*. at 2-3.)  Thereafter, he offered to settle for $76,743.28.  (*Id*. at 4.)

On December 8, 2006, the court granted Defendants' motion for an

extension of time in which to answer Davis' complaint, and directed Defendants to

file a consolidated response to Davis' complaint (Doc. 1) and motion for summary

judgment (Doc. 18) on or before January 22, 2007.  (*See* Doc. 30.)  However,

before Defendants' filed their answer, Davis filed a motion for judgment as a

matter of law on January 3, 2007.  (Doc. 35.)  In that motion, Davis asserted that

he was filing the motion because "the complaint must be telling the truth, because the Defendants cannot tell this court the truth or answer either the complaint or these motions." (Doc. 35.) In his brief in support of the motion, Davis cited Federal Rule of Civil Procedure 55(a),[5] relating to default of a party for failure to plead or otherwise defend, presumably claiming that judgment as a matter of law should be entered against the defendants because they had not yet answered his complaint or motion for summary judgment, nor had communicated with him about possibly settling out of court.[6] (*See* Doc. 35 at 2.)

On January 22, 2007, Defendants timely filed a motion to dismiss, or in the alternative, for summary judgment, based on Davis' failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and his failure to allege personal involvement on behalf of Defendants Miner and Snyder. (Doc. 42.) Defendants timely filed a statement of material

---

[5] Rule 55(a), Default, provides as follows:

(a) Entry.  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

Fed. R. Civ. P. 55(a).

[6] The court will construe Davis' motion (Doc. 35) as a motion for entry of default, and will deny it herein as premature, because Defendants' answer to the complaint and motion for summary judgment was not due until January 22, 2007. (*See* Doc. 30.)

4

facts (Doc. 44), and a brief and exhibits (Doc. 43) in support of their motion.  On

February 2, 2007, Davis filed a reply to Defendants' motion, which responded in

part to Defendants' statement of material facts.  (Doc. 45.)  All motions are now

fully briefed and ripe for disposition.

## III.   Relevant Facts

In his complaint, Davis alleges claims stemming from two separate

incidents which allegedly occurred while he was confined at USP-Allenwood.[7]

### A.   June 15, 2006 Incident

On June 15, 2006, at approximately 12:15 p.m., pursuant to an emergency

institution recall, prison staff members were directed to lock all inmates in their

cells.  (Doc. 44.)  Davis refused to return to his cell because his cellmate was

---

[7] Defendants have attached to their motion for summary judgment a number of
administrative remedy generalized retrieval screen printouts related to administrative remedies
submitted by Davis in 2000, purportedly while incarcerated at the Federal Correctional Institution
in Milan, Michigan ("FCI-Milan").  FCI-Milan is a low security facility with a detention center
for pretrial and holdover male inmates.  *See* BOP Home Page, http://www.bop.gov (last visited
Apr. 11, 2007).  Davis filed four (4) administrative remedies total on March 16 and 17, 2000,
requesting his legal materials and his need for separation.  (Docs. 43-2 at 16-17; 43-3 at 1-3.)
These administrative remedies were filed prior to Davis' sentencing on March 27, 2000, in the
United States District Court for the Eastern District of Michigan to a one hundred and sixty-eight
(168) month term of imprisonment for two counts of threats against the President of the United
States, *see* 18 U.S.C. § 871, and two counts of threatening to murder a United States judge, *see*
18 U.S.C. § 115(a)(1)(B).  As such, these administrative remedies do not relate to Davis' instant
claims, which pertain to alleged incidents occurring on June 15, 2006, and July 14, 2006.  In fact,
Davis himself does not relate the administrative remedies sought in 2000 to those requested in
2006.  (*See* Doc. 45 at 1.)

physically threatening him.  (Doc. 1.)  Because of his refusal to return to his cell,

Davis was immediately transferred to the Special Housing Unit ("SHU"), and later

charged with a code 307 violation, Refusing to Obey an Order of Any Staff

Member.  Defendant Uzialko confiscated his personal property, and locked it in

her office.  (Doc. 44.)  At approximately 3:00 p.m., prison staff inventoried Davis'

personal property and noted four inches of legal materials.  (*Id.*)

On July 3, 2006, Davis was provided with a hearing before a Disciplinary

Hearing Officer ("DHO") to address the charges on the code violation.  (Doc. 43-3

at 15-17.)  Davis denied the charges, but claimed that he voluntarily "checked in"

to the SHU because he feared for his safety.  (*Id.* at 16.)  After considering the

evidence, on July 11, 2006, the DHO found Davis guilty of the code 307 violation

and sentenced him to twenty-one (21) days of disciplinary segregation.  Davis did

not appeal the decision.

On July 13, 2006, prison staff permitted Davis to inventory his personal

property and verify its accuracy.  (*Id.* at 7.)  Davis alleges that Defendant Uzialko

destroyed nearly all of his legal manuals, as well as 579 pages containing his

criminal appeal to the United States Supreme Court.  (Doc. 1.)  Davis filed an

inmate request to the Warden alleging that his personal property had been

destroyed as a result of his placement in the SHU.  (Doc. 18 at 5.)  Defendant

Miner responded on July 26, 2006, informing Davis that some of the items confiscated by prison officials were confiscated pursuant to a prison policy regarding inmate gifts.  (*Id*.)  He also stated, "As for the remainder of your property which you allege is missing, you may file a Tort Claim for reimbursement of any missing item(s)."  (*Id*.)  The record reflects that no further action was taken by Davis prior to filing the instant complaint.

> **B.**   **July 14, 2006 Incident**

On July 14, 2006, while sound asleep in the SHU between 8:30 p.m. and 9:30 p.m., Davis claims his cellmate sexually assaulted the "private parts of my body.  The rim of my rectum was hurting real bad and my penis was redish [sic] brown."  (Doc. 1.)  He also claims that when he informed prison officials of the assault, he heard "loud laughter."  (Doc. 1.)   The record indicates, though, that prison officials responded to Davis' claim by 1:00 a.m. on July 15, 2006, and initiated an investigation.[8]  (Doc. 40.)

Prior to being informed of the results of the investigation by USP-Allenwood officials, on July 24, 2006, Davis filed an administrative remedy to the

---

[8] Upon consideration of a motion to seal filed by Defendants, document 40 has been sealed.  The court has not relied upon the sealed document in its consideration of the motions for summary judgment, as it is not relevant to the dispositive issue of exhaustion of administrative remedies.  *See infra*.

Bureau of Prisons' ("BOP") Northeast Regional Office, alleging that his cellmate had sexually assaulted him.  (Doc. 43-3 at 4.)  On July 28, 2006, the Regional Office rejected the administrative remedy, stating, "this is an issue that can first be addressed by the warden."  (*Id*.)  Thereafter, on August 14, 2006, the USP-Allenwood officials informed Davis that the investigation had been completed and that it was recommended that Davis be transferred to another institution commensurate with his security needs.  (Doc. 1.)

Davis subsequently filed an administrative remedy on August 22, 2006 with USP-Allenwood officials, requesting a transfer because he was being preyed upon by homosexuals.  (Doc. 43-3 at 5.)  That administrative remedy was rejected because Davis had failed to attempt informal resolution prior to submission of the administrative remedy.  (*Id*.)  He was given five (5) days to re-file an administrative remedy, but failed to do so.

Davis next claims that the Warden informed him on August 29, 2006, that the investigation into Davis' claims of sexual assault verified his need for protection.  (Doc. 1.)  In that investigation, however, prison officials concluded

8

that even though no evidence supported Davis' claim, he should nevertheless be

transferred.  (*See* Doc. 40.)  Davis was subsequently transferred to USP-Lee.[9]

## IV.   Legal Standards

### A.   Motion to Dismiss

Defendants have filed a motion which, in part, seeks dismissal of the

complaint on the grounds that Davis' complaint fails to state a claim upon which

relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  The motion, however, goes beyond a simple motion to dismiss under

Rule 12(b)(6) because it is accompanied by evidentiary documents outside the

pleadings contravening Davis' claims.  Rule 12(b) provides, in pertinent part, as

follows:

> If, on a motion asserting the defense numbered (6) to dismiss for
> failure of the pleading to state a claim upon which relief can be
> granted, matters outside the pleading are presented to and not
> excluded by the court, the motion shall be treated as one for summary
> judgment and disposed of as provided in Rule 56, and all parties shall
> be given reasonable opportunity to present all material made pertinent
> to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  The court will not exclude the evidentiary materials

accompanying Defendants' motion to dismiss because Davis also has been given a

---

[9] The precise date of Davis' transfer is not known to the court.  However, on December 15, 2006, Plaintiff filed a notice of change of address indicating that he is now located at USP-Lee.  (Doc. 31.)

reasonable opportunity to present material relevant to the motion.  Thus,

Defendants' motion to dismiss, or in the alternative, for summary judgment, will

be treated solely as seeking summary judgment.

### B.    Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana*

*v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is

"material" if it might affect the outcome of the suit under the applicable law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is

"genuine" only if there is a sufficient evidentiary basis that would allow a

reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.

The court must resolve all doubts as to the existence of a genuine issue of material

fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder*

*v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

The standards governing the court's consideration of Federal Rule 56(c) cross-motions are the same as those governing motions for summary judgment, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the nonmovant. *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

11

**V.**  **Discussion**

Both parties have filed motions for summary judgment in the instant case.

As stated above, Davis has moved for summary judgment "on the grounds that

[Davis] has genuine issues of material facts and full permission from [Defendant

Miner]." (Doc. 18 at 1.)  Defendants have moved for summary judgment, in part,

due to Davis' failure to exhaust his administrative remedies as they relate to both

his tort claim under the FTCA and his constitutional claim under *Bivens*.  Due to

the following disposition of the issues presented in Defendants' motion for

summary judgment, the court need not, and therefore will not, address the merits

of Davis' motion for summary judgment.

**A.**  **FTCA Claims**

It is well-established that a complaint filed pursuant to the FTCA must be

brought against the United States.  28 U.S.C. § 2679(b)(1).  An agency or

employee of the United States is not a proper defendant in such an action.  28

U.S.C. § 2679(b); *Sprecher v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983); *Scheimer*

*v. Nat'l Capital Region, Nat'l Park Services*, 737 F. Supp. 3, 4 (D.D.C. 1990);

*Stewart v. United States*, 503 F. Supp. 59, 61 (N.D. Ill. 1980).

Generally, under the principle of sovereign immunity, the United States government cannot be sued for damages unless it consents to being sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA is the consent by the United States to be sued for torts committed by its employees while in the scope of their employment. *See* 28 U.S.C. § 2675(a). The FTCA sets forth the government's consent to be sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances."[10] *Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991) (quoting § 2674). Under the FTCA, federal inmates may sue the United States for injuries sustained while incarcerated. § 2674.

However, the FTCA limits the jurisdiction of federal courts to hear claims under its provisions. A FTCA plaintiff must first present his claim in writing to the appropriate federal agency as an administrative tort claim. § 2675(a). The statute of limitations for submitting an administrative tort claim to the agency is two years. 28 U.S.C. § 2401(b). The plaintiff may sue in federal court only after

---

[10] In presenting a FTCA claim, a plaintiff must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. *Mahler v. United States*, 196 F. Supp. 362, 364 (W.D. Pa. 1961), *aff'd* 306 F.2d 713 (3d Cir.), *cert. denied*, 371 U.S. 923 (1962).

receiving a "final denial" by the agency.[11]  § 2675(a).  The requirement of

receiving a "final denial" by the administrative agency on a FTCA claim "is

jurisdictional and cannot be waived."  *Bialowes v. United States*, 443 F.2d 1047,

1049 (3d Cir. 1971).

In the instant case, Davis's FTCA action fails on two issues, failure to name

the proper party and failure to exhaust his administrative remedies.  The individual

Defendants are not proper parties under the FTCA.  Because the FTCA authorizes

suits only against the United States, *see* 28 U.S.C. § 2679, not named as a

defendant here, Davis' claims against the individual Defendants will be dismissed.

Moreover, any effort on Davis' part to amend his complaint to include the

United States as a defendant in order to have the court address the merits of his

FTCA claims would be futile because of his failure to exhaust his administrative

remedies.  To exhaust his FTCA claims, Davis is required to submit his claims

alleging personal injury occurring as a result of negligence of staff at USP-

Allenwood to the BOP's Northeast Regional Office.  The record indicates that

Davis did file a claim with respect to the alleged sexual assault with that office on

July 24, 2006, while USP-Allenwood officials were conducting their investigation.

---

[11] The agency may either act to deny the claim or, if no action is taken within six months after being filed, the claim will be deemed a final denial for purposes of filing suit in federal court.  § 2675(a).

(Doc. 43-3 at 4.)  That claim was rejected on July 28, 2006, however, because

Davis had sent his request to the wrong office.  (*Id*.)  The Regional Office also

determined that Davis should first address his claim with the USP-Allenwood

officials.  (*Id*.)  Once USP-Allenwood officials informed Davis of the results of

their investigation, Davis did not return to the Regional Office with his complaint.

Thus, the Regional Office was not afforded the opportunity to issue a final denial

on Davis' claim of sexual assault.  As a result, the court finds that Davis did not

exhaust his administrative remedies with respect to his FTCA claim of sexual

assault.[12]  The court notes, however, that because Davis' claim stems from an

alleged incident occurring on July 14, 2006, he remains within the two-year statute

of limitations period for filing such a tort claim to the BOP's Northeast Regional

Office.

Turning to Davis' FTCA claim for property loss, there is nothing in the

record indicating that Davis filed a FTCA claim with the BOP's Northeast

Regional Office.  Furthermore, in his complaint Davis asserts that he has not

presented the facts relating to his complaint in the prison grievance procedure.

---

[12] Davis did file a subsequent administrative remedy with USP-Allenwood officials on
August 22, 2006, requesting a transfer because he was being preyed upon by homosexuals, which
may or may not have been related to his earlier specific claim of sexual assault, but that
administrative remedy was rejected on August 22, 2006, and Davis did not appeal that denial.

(Doc. 1.)  The court notes, however, that attached to Davis' motion for summary judgment is a July 26, 2006, response from the Warden to Davis' inmate request regarding his legal materials.  In that response, the Warden stated, "As for the remainder of your property which you allege is missing, you may file a Tort Claim for reimbursement of any missing item(s)."  (Doc. 18.)  There is, however, nothing to indicate that Davis ever filed such a tort claim with the Regional Office.  As a result, Davis has failed to exhaust his administrative remedies with respect to the FTCA claim of property loss.  The court again notes, however, that because Davis' claim stems from an alleged incident occurring on June 15, 2006, Davis remains within the two-year statute of limitations period for filing such a tort claim to the BOP's Northeast Regional Office.

## B. *Bivens* Claims

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "The PLRA attempts to eliminate unwarranted federal-

court interference with the administration of prisons, and thus seeks to afford

corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal

quotation and citation omitted).  "The benefits of exhaustion can be realized only

if the prison grievance system is given a fair opportunity to consider the

grievance."  *Id*. at 2388.

The PLRA mandates that inmates "properly" exhaust administrative

remedies before filing suit in federal court.  *Id*. at 2387.  "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings."  *Id*. at 2386.  Failure to

substantially comply with procedural requirements of the applicable prison's

grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*,

372 F.3d 218, 227-32 (3d Cir. 2004).  The PLRA "completely precludes a futility

exception to its mandatory exhaustion requirement."  *Nyhuis v. Reno*, 204 F.3d 65,

71 (3d Cir. 2000).

A prisoner does not have to allege in his complaint that he has exhausted

administrative remedies.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Failure

to exhaust available administrative remedies is an affirmative defense.  *Id*.  As

such, it must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d

109, 111 (3d Cir. 2002).

The BOP has established an Administrative Remedy Program through

which an inmate can seek formal review of any complaint regarding any aspect of

imprisonment. 28 C.F.R. §§ 542, *et seq*. The purpose of the program is "to allow

an inmate to seek formal review of an issue relating to any aspect of his/her own

confinement." 28 C.F.R. § 542.10(a). The Administrative Remedy Program has

four steps: (1) an informal resolution attempt, (2) the filing of a formal

administrative remedy request with the Warden, (3) an appeal to the Regional

Director, and (4) a final appeal to the BOP's General Counsel. 28 C.F.R. §§

542.13-542.15. No administrative appeal is considered to have been finally

exhausted until a decision is reached on the merits by the BOP's General Counsel.

Defendants assert that Davis has failed to exhaust his administrative

remedies on his *Bivens* claims involving his loss of legal materials and his alleged

sexual assault. As to his claim involving the loss of his legal materials, the only

evidence in the record of Davis pursuing an administrative remedy is the June 26,

2006, response from the Warden to an inmate request filed by Davis. Nowhere in

his opposition materials to Defendants' motion for summary judgment does Davis

dispute Defendants' assertion that he failed to avail himself of all available

administrative procedures with respect to this claim.  (*See* Docs. 18, 35, 45.)

Additionally, Davis openly admits in his complaint that he did not present the facts

relating to the present action in a grievance to prison officials prior to initiating

this action.  (Doc. 1.)  Accordingly, Defendants are entitled to summary judgment

in their favor as Davis has failed to exhaust his available administrative remedies

on this claim.[13]

   As to Davis' Eighth Amendment claim for failure to protect arising from his

alleged sexual assault, the record clearly demonstrates that Davis has not availed

himself of all available administrative remedies.  In support, Defendants have

submitted the BOP's records concerning any administrative grievances Davis has

filed and the investigation into Davis' claim.  Davis did file an administrative

remedy to the Northeast Regional Office on July 24, 2006, but it was rejected on

July 28, 2006, for failure to seek an administrative remedy at the institution level

first.  Davis' subsequent grievance, filed on August 22, 2006, requested a transfer

because he was being preyed upon by homosexuals.  That administrative remedy

was rejected because Davis had failed to attempt informal resolution prior to

---

[13] Because the exhaustion of administrative remedies is a threshold issue, there is no need
to consider Defendants' alternative arguments that Davis failed to allege personal involvement by
Defendants Miner and Snyder, and that all Defendants are entitled to qualified immunity.

submission of the administrative remedy.  He did not appeal that decision to either USP-Allenwood officials or to the Regional Office.

The record does show that USP-Allenwood officials investigated Davis' claim.  In his complaint, Davis asserts that the Warden notified him on two separate occasions of the results of that investigation.  (Doc. 1.)  There is nothing in the record indicating that Davis filed any further administrative remedies with respect to his claim of failure to protect arising from the alleged sexual assault. Thus, Defendants are entitled to summary judgment in their favor as Davis has failed to exhaust his administrative remedies on this claim.

### C.   <u>Other</u>

To the extent that Davis' complaint can be construed as a deprivation of constitutional rights due to the loss of his property, namely his legal materials, this claim would also fail due to Davis' failure to exhaust available administrative remedies.  Furthermore, Davis did not raise a denial of access to the courts claim in his complaint, (*see* Doc. 1), nor has he provided evidence that any of the Defendants prevented him from filing any document with any court.

## VI.    <u>Conclusion</u>

There is nothing in the record to create a genuine issue of material fact with regard to whether Davis has exhausted his available administrative remedies. Defendants have met their burden in showing that Davis has failed to exhaust his available administrative remedies before filing his complaint.  Consequently, the court will grant Defendants' motion for summary judgment.


<u>                                            s/Sylvia H. Rambo                </u>
SYLVIA H. RAMBO
United States District Judge


Dated:  April 26, 2007.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS L. DAVIS,** | : | **CIVIL NO. 1:CV-06-01763** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **J. MINER, WARDEN,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

<u>**ORDER**</u>

In accordance with the accompanying memorandum of law, **IT IS**

**HEREBY ORDERED THAT**:

    1)  Plaintiff's motion for judgment as a matter of law (Doc. 35) is DENIED.

    2)  Plaintiff's motion for summary judgment (Doc. 18) is DENIED;

    3) Defendants' motion for summary judgment (Doc. 42) is GRANTED; and

    4) The Clerk of Court shall enter judgment in favor of Defendants and

against Plaintiff and close the file.

                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated:  April 26, 2007.